JOHN MITCHELL, JOHN V. METZELL and PATRICK HEARTY vs. NOAH LEMON.

*Action of Trespass and False Imprisonment—Arrest - without Warrant—Duty of the Police of the City of Baltimore to arrest persons violating the Health Regulations of the City.*

A licensed nightman, in the act of violating certain health regulations of the city of Baltimore, by depositing nightsoil at a place not designated by the Board of Health, was arrested by a policeman during the night, without warrant, under the directions of said Board, and confined in the station-house until the next morning, when he was released on his own recognizance. The nightman, at the time of his arrest, was aware of the order of the Board of Health, designating particular localities for the deposit of nightsoil, but disregarded the order because it cost him more to take the ordure to those places than to the place where he was at the time depositing it. No violence or unnecessary force was used in his arrest and detention. HELD:

That an action of trespass and false imprisonment by the nightman against the officers who arrested and detained him, would not lie, the arrest having been made by direction of the Board of Health, upon whom was imposed the duty of executing all ordinances for the preservation of the health of the city; and the procurement of a warrant as a preliminary to such arrest and detention, was not necessary.

The Police Department of the city of Baltimore being charged by law with the duty of enforcing the ordinances of said city in regard to the public health, and the orders of the Board of Health in pursuance thereof, is justified in arresting, by direction of said Board, any one found violating the health regulations of the city.

APPEAL from the Court of Common Pleas.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Thomas W. Hall, Jr.,* and *S. Teackle Wallis,* for the appellants.

The Court below erred in granting the plaintiff's prayer, among other respects, by submitting to the jury a question of

law.  In view of the Acts of Assembly conferring power upon the city of Baltimore to provide for the preservation of the public health, and of the police law, making it the duty of the police force to "*guard the public health*," "*prevent* and remove *nuisances*," "see that all laws relating to the public health are enforced," and " to enforce all ordinances of the Mayor and City Council of Baltimore which may be properly enforceable by a police force," and of the specific provisions of the ordinances of the Mayor and City Council upon the subject, and of the orders and regulations made by the Board of Health in pursuance thereof—whether the particular act for which the plaintiff, Lemon, was arrested, was or was not a " nuisance," which it was the duty of the police force " to prevent," and to prevent which the power of arrest might be lawfully exercised, was a question of law for the Court—not of fact for the jury.   *Code of Pub. Local Laws, Art. 4, sec.* 797, *and Act of* 1867, *ch.* 367; *Balto. City Code, Art.* 23, *title " Health," ordinances, secs.* 1, 7, 33, 34, 35, 38, 39, 86, 87.

If the act committed by Lemon was a nuisance, " to prevent" which was a part of the inherent duty of the police force as such, or specially made a duty by any of the Acts or Ordinances referred to, the power to arrest clearly existed. *Act of* 1867, *ch.* 367, *Pub. Local Laws,* (*Sup.* 1867,) *Art. 4, sec.* 809; *Baltimore City Code, title " Health," ordinances, sec.* 7, (*page* 283;) *Shafer and Wife vs. Mumma,* 17 *Md.,* 331, 336.

If the *power* to arrest in such cases be conceded, it was improperly left to the jury to say whether, under the special circumstances of Lemon's case, it was *necessary* to exercise that power.   The exercise of the power was a matter within the lawful discretion of the Police Commissioners, and the orders received constitute the complete justification of the defendants, who were subordinate officers of the force.  If the order be within the discretion of the superior, it is a sufficient protection for the inferior, who acts in obedience to it, although

the discretion given to the superior be abused or unwisely exercised. *Mitchell vs. Harmony,* 13 *How.,* 137.

Any thing prejudicial to the public health is a nuisance. The power given to the city of Baltimore to protect the public health by all needful sanitary regulations, is as ample as any which the sovereign power can confer. *Harrison vs. Mayor, &c.,* 1 *Gill,* 276. And any man's reasonable reflection will show that the removal and transportation of nightsoil in a large city, in any other way than the municipal regulations permit, or its deposit at any other than the appointed places specially provided for the purpose, is a very gross and intolerable nuisance, and one which it requires especial vigilance and effort on the part of the police to prevent, owing to the hour at which such offences are usually committed.

The police force is the executive arm of society. Its duty is prevention, not punishment. The duty to prevent carries with it *ex vi termini* the power to arrest. It has been authoritatively declared by this Court, speaking with special reference to the necessities of a great city like Baltimore, to have "always been understood that, under the police power, persons disturbing the public peace, persons *guilty of a nuisance,* or obstructing highways, and the like offences, may be *summarily arrested* and fined, without any infraction of that part of the Constitution which apportions the administration of the judiciary power strictly as such." *Shafer and Wife vs. Mumma,* 17 *Md.,* 336 ; also, *Spalding vs. Preston,* 21 *Verm.,* 12, 13, 14 ; *Mayor, &c. vs. The State,* 15 *Md.,* 390 ; *The People vs. Draper,* 25 *Barb.,* 374.

No appearance for the appellee.

ALVEY, J., delivered the opinion of the Court.

This was an action by the appellee, a licensed nightman in the city of Baltimore, against the appellants, members of the police force in that city, of trespass and false imprisonment.

The appellee was arrested and confined in a station-house of the city, without process, for the violation of certain health regulations in regard to the removal and deposit of nightsoil. The facts are uncontroverted, and from them it appears that the appellee was, at the time of the arrest, in the act of violating the ordinances of the city. The Board of Health, in pursuance of an ordinance upon the subject, had designated the places for the deposit of the nightsoil, and given notice of the fact, and no sink or vault was allowed to be cleaned, or the contents removed, unless by special permit from the Commissioner of Health. The appellee, as witness in the cause, admitted that he was aware, at the time of the arrest, of the order of the Board of Health, designating particular localities for the deposit of the nightsoil, but that he disregarded the order, because it cost him more to take the manure to those places than to the place where he was at the time depositing it. By ordinance, it is made the duty of the Board of Health to cause to be executed and observed all ordinances for the preservation of health; and, by another ordinance, it is made the duty of the police officers to execute all orders of the Board of Health, so far as they may relate to the preservation of the health of the city. Instructions were given by the Commissioner of Health to the Board of Police Commissioners, through whom the police power of the city is exercised, and to the Captains of Police, not to permit the deposit of nightsoil at other places than those designated, and to prevent its being done, by the arrest of the parties attempting it. Among the duties of the Board of Police Commissioners, prescribed by law, (*Sup. Code, Pub. Local Laws, Art. 4, sec.* 809,) are those of preserving the public peace, preventing crime and arresting offenders, guarding the public health, and enforcing all laws in relation thereto, and of enforcing all laws and ordinances which may be properly enforceable by a police force. The police power thus delegated to the Police Commissioners, is executed and enforced by the agency of a regular police organization, authorized by the 810th section

of the law just referred to, the members of which act under the authority and direction of the commissioners, and in obedience to the ordinances of the city. The police department being, as we have seen, charged with the duty of enforcing the ordinances in regard to the public health, and of the orders of the Health Commissioners in pursuance thereof, directions were given by that department to the policemen, among them the defendants, for the arrest of persons found violating the health regulations; and it was in consequence of such directions that the appellee was arrested and confined in the station-house. He admits, in his testimony, the commission of the act alleged to be in violation of the health regulation of the city; and he also admits that no violence or unnecessary force was used in his arrest and detention. On this state of case, the Court below instructed the jury that they must find for the appellee, the plaintiff, " unless they should find that the plaintiff was about to commit a nuisance, and that it was necessary to make such arrest and imprisonment in order to prevent the same." To this the appellants excepted, and whether such instruction was correct or not, is the only question presented to this Court.

There being no pretence that there was any malice on the part of the appellants, and the arrest and detention being attended with no circumstances of violence or aggravation, the instruction of the Court, instead of being what it was, should have been, that the appellee, on his own testimony, was not entitled to recover. The question was simply whether the appellee had been arrested in the act of violating the ordinances and legal regulations of the city, for which he was liable to be arrested. That he was, at the time of his arrest, in the act of violating the health regulations, he admitted in his own evidence. Whether what he was doing constituted a nuisance, in the common law sense of that term, was immaterial; for, if his act was unlawful and subjected him to arrest, the appellants, as policemen, were justified in arresting and detaining him for hearing. The appellee was found

doing what the policemen had good reason to believe he was forbidden to do; and as it was at the hour of midnight, when it would have been difficult, perhaps impossible, to recognize either the appellee or the number on his cart, what other course could the policemen have pursued than the one they did? To say that they should not have arrested and detained the offender, without first obtaining a warrant, is virtually to say that the regulations could be violated with impunity.

And as to the power of arrest and detention without warrant, under the circumstances, we think there can be no question. Express power is conferred upon the police force to *prevent crime and arrest offenders.* It is true, the statute does not say without warrant; but that is necessarily implied in all cases where constables and police officers can make arrests, without first obtaining a warrant at the common law. Such officers, by the common law, have full power to arrest and detain the offender, where the offence is committed in their view, and this, whether the offence be one at the common law, or created by statute or police regulation. Indeed, without such power, it would be impossible to execute the various police regulations of a prohibitory or preventive character. For it is obvious, if it were necessary before arresting an offender, caught in the act of offending, that a magistrate's warrant should be obtained, many offences and violations of the police regulations, would be accomplished and the offender, if transient and unknown, would escape altogether. This is not contemplated either by the statute conferring the police power, or the common law. The authorities are abundant and full, not only to establish the right, but which declare it to be the duty of the officer, in such cases, to arrest and detain the party found offending until a proper hearing can be had. 2 *Hale, P. Cr.,* 89, 97; 4 *Hawk., P. C., ch.* 12, *sec.* 20; *ch.* 13, *sec.* 6; 4 *Blk. Com.,* 292; *Lawrence vs. Hedger,* 3 *Taunt.,* 14; *Rex vs. Bootie,* 2 *Burr.,* 865; 1 *Chit. General Practice,* 617, 618; *City Council*

vs. Payne, 2 Nott & McC., 475; Com. vs. Deacon, 8 Sergt. & Rawle, 47; Spalding vs. Preston, 21 Vt., 9.

There is no doubt of the right of the city authorities to establish and enforce the regulations in question, and that being so, the only effectual way of enforcement was the preventive one of arrest. The right to detain for hearing was the legal and necessary consequence of the right to arrest; and as the party was released without any unnecessary delay, on his own recognizance, we cannot perceive that he has any ground whatever for his action. The judgment must therefore be reversed.

*Judgment reversed.*