[No. 21601.   Department Two.   December 30, 1929.]

THE STATE OF WASHINGTON, *Respondent,* v. TONY
ZUPAN, *Appellant.*[1]

[1]Reported in 283 Pac. 671.

81

Robertson, Paine & Schaaf, for appellant.

Chas. W. Greenough and Ralph E. Foley, for respondent.

MILLARD, J.—The defendant was charged by information with the crime of unlawful possession of intoxicating liquor and with two prior convictions, as follows:

"That the said defendant, Tony Zupan, in the county of Spokane, state of Washington, on or about the 5th day of January, 1928, then and there being, did then and there wilfully and unlawfully have in his possession intoxicating liquor, to wit: Moonshine whiskey, with intent then and there to sell, barter and exchange the same;

"That the said defendant, Tony Zupan, on the 24th day of November, 1926, in cause No. 9276, was convicted of the crime of intoxicating liquor in possession with intent to sell, . . .

"That the said defendant, Tony Zupan, on the 17th day of January, 1923, in cause No. 8193, was convicted of the crime of having in possession intoxicating liquor, . . ."

From the judgment and sentence pronounced against him on the verdict of guilty on all three counts, the defendant appeals.

About midnight of January 5, 1928, two officers of the dry squad of the city of Spokane were hidden in a garage in that city near a certain hotel, awaiting the arrival of an automobile, they having been informed that a delivery of whiskey would be made at that point by automobile. One of the officers testified:

"We went there on a tip that, if we would go there between the hours of eleven and twelve, or from that up to one o'clock, we would see them unload whiskey."

From their point of observation in the garage, the two officers, for ten or fifteen minutes, watched the appellant, who was nervously walking to and fro in front of the hotel. A large automobile drove within ten feet of the curbing and stopped. The appellant ran or hastily walked to the automobile, took a suitcase therefrom and ran or walked hurriedly back to the hotel and up the stairway of same. The automobile, immediately following the withdrawal therefrom of the suitcase, turned around in the middle of the street and was rapidly driven away. One of the officers tried to overtake the automobile, but was unsuccessful. On his return to the hotel, he found the other dry squad officer and the appellant. When one of the officers endeavored to overtake the automobile, the other officer ran to apprehend the appellant. The latter officer recognized the appellant while pursuing him:

"Q. Did you recognize Tony Zupan before you caught up with him? A. I did. Q. Were you acquainted with Tony Zupan? A. Yes, sir, I am. Q. You have talked to him before? A. I have."

Appellant was overtaken by the officer on the first landing of the stairway of the hotel. One of the officers testified that, when the appellant was questioned

as to the contents of the suitcase, he replied, "Well, I guess you fellows know what it is." The other officer testified that the appellant said, "You know." The suitcase was opened and found to contain three one-gallon jugs of moonshine whiskey. Whether the appellant recognized the officer and voluntarily surrendered the suitcase, the record does not disclose. The officers did not have a warrant for the arrest of appellant. The arrest of appellant and the seizure and search of the suitcase were made without a warrant.

The officer who pursued the automobile and returned to the hotel where appellant and the other officer were, testified on direct examination:

"Q. Did you have any conversation with the defendant at that time—anything that would be relevant in this matter? A. Well, we had a conversation. I don't just remember all that was said. Q. Did he say anything in relation to having the liquor in his possession? A. As I remember it, in speaking to him about it he said, 'Well'—we asked him what he had in his suitcase and he said, 'Well, I guess you fellows know what it is.' "

The officer who captured the appellant on the stair landing testified:

"Q. Will you tell the jury in your own words just what you observed there? A. We went into the vicinity of Trent and Brown and stayed there for some time, and this man, Tony Zupan, came up pretty near to the corner and walked back and forth and looked up and down Trent, and kind of nervous, and after a while a big automobile pulled up and he rushed over to the car and got a suitcase and started for the hotel, and I started after him and caught him in the stairway, on the landing—the first landing of the stairway. . . . Q. Just go ahead and tell what you did then? A. I asked him what he had in the suitcase and he said, 'You know.' He said he hadn't carried a suitcase for five weeks. And Harry Alderson came in and we opened the suitcase—the suitcase was opened by

one of us. I don't remember which one, and contained moonshine whiskey. MR. ROBERTSON: If the court, please, I move to strike that as having been given too quickly for me to object. It comes under the general objection that I made before, as to the violation of the defendant's constitutional rights. THE COURT: The objection will be overruled and exception allowed. Q. What were the contents of the suitcase you refer to? MR. ROBERTSON: I would like to ask one question, if I may? (By Mr. Robertson) Q. Did you have a warrant for the arrest of the defendant? A. No, sir. Q. Did you have any search warrant? A. No, sir. MR. ROBERTSON: Now, I desire to object to the question upon the ground that his answer would be in violation of the defendant's constitutional rights, and that the search and seizure of any suitcase at that time would be in violation of his constitutional rights. THE COURT: The objection will be overruled and exception allowed. A. Moonshine whiskey. Q. What was the whiskey contained in? A. Three one-gallon jugs.''

Appellant was taken into custody and complaint made charging him with possession of intoxicating liquor with intent to sell in violation of a city ordinance. Some days later an information was filed charging the appellant with the crime of unlawful possession of intoxicating liquor with intent to sell the same and with two prior convictions, and the pending case in the police court was dismissed.

The denial of the motion to suppress the evidence consisting of three one-gallon jugs of moonshine whiskey seized by the officers of the dry squad without a search warrant, and the introduction of the seized liquor in evidence upon the trial, are assigned as error.

■ Motion was seasonably made to suppress the evidence in the case. Affidavits supporting and resisting the motion were submitted by the appellant and the state. To review the ruling of the trial court as to the legality of the seizure and search, an examination of the affidavits is essential. The affidavits are

incorporated in the clerk's transcript, but are not made a part of the record by statement of facts. We note that counsel for appellant state in their brief with reference to the affidavits, "counsel have stipulated that they may be treated and referred to as if embodied in the statement of facts."

The rule is that affidavits not made a part of the statement of facts can not be considered on appeal. Stipulation of counsel that affidavits incorporated in the clerk's transcript may be deemed included in the statement of facts is not a compliance with that rule.

The seized liquor was properly admitted in evidence. It was sufficiently identified, and from our examination of the statement of facts (the appellant did not testify nor was any evidence offered in his behalf), we are convinced that the arrest of appellant was lawful and that the liquor was not unlawfully seized.

█ Counsel for appellant argue that the officers were not justified in arresting the appellant upon the theory that he was committing a misdemeanor in their presence.

"That such was their theory is shown by the fact that they charged him with a misdemeanor in violation of the city ordinance, and did not file a state charge against him until thirteen days later, when he was again arrested, but this time on a warrant."

Appellant's counsel further contend that the arrest would not be legal even if it had been made for the felony of bootlegging, as the circumstances were sufficient to give rise merely to a suspicion, and cite *State v. Hughlett*, 124 Wash. 366, 214 Pac. 841, in which are enunciated the rules which should govern in determining the legality of an arrest, either for a misdemeanor or a felony. In that case we said:

"It is contended, in the first place, that the officers

had no authority to take the whiskey, because they had no authority to make the arrests without a warrant for that purpose. Circumstances, however, may arise where it is not only within the power of the police officers, but it is their duty to make arrest without any warrant therefor. In misdemeanor cases the officer may not arrest without a warrant therefor, except where the crime is being committed in his presence, or where he had actual knowledge that the person about to be arrested committed the crime. But in cases amounting to a felony, if the officer believe, and have good reason to believe, that a person has committed, or is about to commit, or is in the act of committing the crime, then he may arrest without a warrant. But the arresting officer must not only have a real belief of the guilt of the person about to be arrested, but such belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. An officer may not arrest simply because he has some fleeting idea that one may be about to commit a felony, but he must have a reasonable ground for his belief. 2 R. C. L., 446-450; 5 C. J., 398 *et seq.;* 416 *et seq.; State v. Symes,* 20 Wash. 484, 55 Pac. 626. We do not consider it necessary to recite all the facts upon which the sheriff based his belief that the appellants were committing a felony; suffice it to say that the facts bring this case easily within the rule of the authorities. We therefore hold that the appellants were not unlawfully arrested. But it is contended that, even if the appellants were lawfully arrested, the officers had no right to search and take from them any of their property whatsoever, except such as was upon their persons, and that, since the liquor in question was not on their persons but was in the automobile which they were driving the seizure was unlawful. . . . It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, *without* a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged. If a search may be made of the person or

clothing of the person lawfully arrested, then it would follow that a search may also be properly made of his grip or suitcase which he may be carrying.''

If the officers had reasonable grounds to believe that appellant had committed, or was about to commit, or was in the act of committing the felony of bootlegging, they were justified in arresting the appellant without a warrant. If the appellant were arrested for the violation of a city liquor ordinance, a misdemeanor committed in the presence of the officers, the arrest without a warrant was legal.

Conceding, *arguendo*, the correctness of the court's instruction to the jury to disregard the testimony as to the source of the information received by the officers that liquor would be delivered at a designated hotel at a certain time, it follows that the information,

''We went there on a tip that if we would go there between the hours of eleven and twelve, or from that up to one o'clock, that we would see them unload the whiskey. . . .''

would not alone be a lawful basis for the arrest of appellant and the search of his suitcase without a warrant authorizing that action.

''The anonymous information conveyed to the law enforcement officers did not of itself afford a lawful basis for the arrest of appellant and the search of his automobile without warrants authorizing such action.'' *State v. Knudsen,* 154 Wash. 87, 280 Pac. 922.

What are the facts? Each of the two dry squad officers was a peace officer of not less than fifteen years' experience. They were on a lawful mission. It was their business, their duty, to apprehend dry law violators. They had information (we are mindful that, standing alone, such information would not authorize arrest without a warrant) that, if they would watch a

certain place, they would witness the transportation to, and unloading at, that point of intoxicating liquor. They followed that "tip." A nervous man, a suspicious character, was pacing to and fro, apparently on the lookout for someone. An automobile appeared at the stated hour. The nervous man rushed to the car and received therefrom a suitcase. The automobile was hurriedly turned in the middle of the street and dashed away so rapidly that it outdistanced one of the officers who endeavored to overtake it. The man with the suitcase ran towards the hotel. The officer who pursued the man with the suitcase recognized him and overtook him. The man with the suitcase was the appellant, who had twice previously been convicted of liquor law violation. We gather from a reading of the testimony that the appellant was arrested following his disclosure as to the contents of his suitcase and that a search was then made of the suitcase. Haukendahl, the apprehending officer, testified that he overtook the appellant, who replied to the inquiry as to what his suitcase contained, "You know;" and the other officer, Alderson, "came in and we opened the suitcase." Alderson testified that the arrest preceded the search, but did not testify that the arrest was made prior to appellant's revelation that his suitcase contained intoxicating liquor. There is nothing in the record from which we may conclude that appellant was coerced into making any statement or into surrendering his suitcase. The appellant did not testify, nor did he call any witnesses in his behalf. The appellant was accosted by the officer to whose inquiry as to what the suitcase contained replied, "You know." Of course the officer knew. He was acquainted with the business of the appellant. This then two-time offender, now three-time liquor law violator, could not have more succinctly conveyed to the mind of that ex-

perienced dry squad officer the information that the suitcase contained intoxicating liquor. Under the circumstances, it was not an infringement of appellant's constitutional rights to accost him and inquire as to his business. When the appellant informed the officer that he, the appellant, was carrying about intoxicating liquor, the duty then devolved upon the officer to arrest the appellant.

That the appellant was first booked on the charge under a city ordinance of having liquor in possession with intent to sell, and later charged by information with the crime of unlawful possession of intoxicating liquor with intent to sell and with two prior convictions, appellant insists, establishes the fact that he was arrested for a misdemeanor and not a felony. We see no comfort for appellant in this position. If classified as a misdemeanor, the offense was being committed in the officer's presence (appellant so admitted to the officer), hence the arrest without a warrant was lawful, and the subsequent search of the suitcase and the seizure of the liquor contained therein were also lawful. That the officers had reasonable grounds to believe, and did believe, the appellant was committing the felony of bootlegging when they made the arrest, we are convinced. That the appellant was booked on a misdemeanor charge and later informed against as for a felony, is not determinative of the crime for which the officers arrested him.

"We do not fail to note that, after the arrest, the deputy prosecuting attorney charged appellant with the crime of unlawful possession only, that being a misdemeanor; but we think that it is apparent that the officers arrested appellant upon the theory that he was guilty of the felony of bootlegging, and that they were justified in making the arrest upon that assumption." *State v. Thornton,* 137 Wash. 495, 243 Pac. 12.

The appellant was acting in a suspicious manner.

When pursued he was recognized by the officer. He was stopped. When questioned, he admitted his guilt. He was then arrested, his suitcase searched and the three gallons of intoxicating liquor seized as evidence. We are not ready to hold that an officer patrolling his beat or making his rounds may not, in such a case as this, accost a person acting as appellant was acting and inquire as to his business. To require the officer to depart from the scene and obtain a warrant, would result in the escape of the criminal and aid an outlawed traffic. Only by prompt action of the officers will bootlegging be prevented. Other provisions of the constitution are as important as the one relating to unreasonable searches and seizures. No constitutional right of the appellant has been invaded, therefore he may not successfully invoke the constitution as a means of concealment of his crime. We are convinced by the facts presented that the arrest was lawful, from which it follows that the search and seizure were also lawful. What the officers saw and what they were told by appellant justified them in arresting the appellant without a warrant.

Appellant complains of a portion of the prosecuting attorney's opening statement to the effect that the officer had information that a delivery of liquor was to be made at a certain hotel.

In his opening statement, the prosecutor told the jury that the officers had information, whereupon the following occurred:

"Mr. Robertson: I object to anything with reference to what the information was. It would be hearsay, if the court please. The Court: Well, proceed, gentlemen. This is the opening statement. Mr. Foley: —that there was to be a delivery of liquor to the blank hotel,—Mr. Robertson: I desire to take exception to the statement, if the court please, being hearsay and improper."

The prosecuting attorney did not, at any time while making his opening statement, tell the jury the source of the information received by the officers. It was the prosecutor's theory that, if the officers acted upon reliable information and, without warrant, arrested appellant, believing that he was in the act of committing the felony of bootlegging, the officer was justified in making the arrest. If the officers received reliable information upon which they acted, the testimony of the officers as to that fact would be admissible.

"We think the trial judge was fully warranted in believing that the officers had received apparently very reliable information from other peace officers, including the sheriff of Yakima county, and the chief of police of the city of Yakima and a Federal prohibition agent, that appellant had been delivering liquor in Yakima in violation of law, and that on the morning of April 1st he was to receive liquor, just as the officers discovered that he did receive it; that is, the officers saw appellant go to the car and bring out the suitcases, preparatory to putting them in his automobile, substantially as they, by their previous information obtained, had expected him to do. These facts, we think, were ample justification for the officers making the arrest in the belief that appellant was in the act of committing the felony of bootlegging." *State v. Thornton,* 137 Wash. 495, 243 Pac. 12.

The character of the information, the source of the information—all of the grounds upon which the officers based their belief that appellant was in the act of committing a felony, were facts which it was competent for the state to prove. Assuming the facts stated by the prosecutor were irrelevant or that he introduced incompetent evidence in support of the facts, the prosecutor's statement is not error. He acted in good faith and with reasonable grounds for supposing that he could prove the facts as stated.

"The prosecuting attorney may generally, in open-

ing his case to the jury, fully outline the facts which he expects, and which it is competent for him to prove; and, although he states facts which are not followed by proof because the facts themselves are irrelevant, or because he fails to introduce any evidence or introduces incompetent evidence to support them, his statement is not error, if he acts in good faith and with reasonable grounds for supposing that he can prove the facts as stated, especially where they relate to the transaction or act directly resulting in the consummation of the crime." 16 C. J., p. 890, § 2226.

■ Appellant next complains of the admission of testimony as to the reason why the officers were in the vicinity of the hotel the night appellant was arrested, and of the admission of testimony as to the reputation of the hotel as a place where liquor had been kept.

The testimony during the forenoon session of the trial which appellant contends is objectionable reads as follows:

"Q. How did it happen that you were in the vicinity of the blank hotel on the night of January 5, 1928? Mr. Robertson: I object to that as incompetent, irrelevant and immaterial. The Court: Objection overruled and exception allowed. A. *We went there on a tip that if we would go there between the hours of eleven and twelve or from that up to one o'clock we would see them unload the whiskey.* Mr. Robertson: I move to strike that on the ground that it is incompetent, irrelevant, immaterial and hearsay. The Court: The objection will be overruled. Gentlemen, I am admitting this, as I say, as bearing on seizure. Exception allowed. Mr. Foley: Q. Who informed you that if you went there at that time you would see them unload the liquor? Mr. Robertson: I object to that on the ground it is incompetent, irrelevant, immaterial, and hearsay. The Court: Same ruling. A. My partner is the one that told me—Mr. Haukendahl. Mr. Foley: Q. Did you have a talk while you were in the vicinity of the blank hotel with any one there in regard to deliveries of liquor to the blank hotel? Mr.

Robertson: Same objection, if the court please. The Court: Same ruling. A. Yes, sir. Mr. Foley: Q. Tell the jury who you talked to. A. We talked to a man that was the night man in the garage just across the street from the blank hotel, known as the blank garage. Q. Did he say anything in regard to deliveries of liquor to the blank hotel? Mr. Robertson: Same objection. The Court: Same ruling. A. Yes, sir. Mr. Foley: Q. State what that was, please. A. He told us that the—Mr. Robertson: If the court please, I understand that goes in under my objection without repeating it? The Court: Yes, you may have an objection to all this line of testimony. Mr. Robertson: All right. A. He told us that if we would just stay there and wait and watch that we would see the load come up and unload. And he said it might be any time between eleven and one o'clock in the morning. And we stayed there in that office and seen Tony out there for ten minutes before the wagon did show up. He came to the corner and looked up and down both ways. Finally this large car drove up and stopped about ten feet from the curb directly in front of the entrance to the hotel, and Tony run out there and took this suitcase out of the car and started upstairs, as I told you before. Q. *Did the night garageman say that this transaction had occurred at previous times?* Mr. Robertson: Same objection. The Court: Same ruling. A. *He said that he had seen it happen several times.* Mr. Foley: Q. When you saw the defendant, Tony Zupan, on the corner and observed the touring car drive up and the defendant start after it, did you believe then that the liquor was about to be delivered? Mr. Robertson: I object to that as calling for a conclusion of the witness, and as incompetent, irrelevant, and immaterial. The Court: I think I will sustain the objection to that. He can tell what was done and the jury can draw their conclusions on that. Mr. Foley: Q. Are you familiar with the reputation of the blank hotel? Mr. Robertson: I object to that as incompetent, irrelevant and immaterial. The Court: Overrule the objection at this time and allow an exception. A. Just what was the question? (Question read). A. I

am. Mr. Foley: Q. What is it? A. Bad. Mr. Robertson: I move to strike that out on the ground that it is incompetent, irrelevant and immaterial. The Court: Well, it is pretty general, Mr. Prosecutor. I think I will sustain the objection as too general. Mr. Foley: The only purpose your honor, in asking the question I am now asking, and have been, is to show the information and knowledge that the officers had giving them grounds for the search. The Court: Yes, I appreciate that, Mr. Prosecutor, still it seems to me too general. In other words, the court can conceive of a reputation bad in some respects that might not have any relevancy at all. Mr. Foley: I meant in reference to a place where liquor was—The Court: Re-state your question, Mr. Prosecutor, if you will. Mr. Foley: Q. Do you know whether or not liquor has been handled at the blank hotel by guests or others? Mr. Robertson: I object to that as incompetent, irrelevant and immaterial. The Court: I think I will sustain the objection to that question. Mr. Foley: Q. Do you know the reputation of the blank hotel as a place where liquor has been kept? A. I do. Mr. Robertson: I object to that—All right. The Court: The objection will be overruled and exception allowed. A. I do, and it is bad. Mr. Robertson: Your honor understands that went in under my objection and I move to strike it out. The Court: The motion will be granted as to the last part. The question was, as to whether you know or not, Mr. Witness. The last part of the answer may be stricken as not responsive. The first part may stand. He said he does. That part may stand. Mr. Foley: Q. What is it? Mr. Robertson: I object to that as incompetent, irrelevant and immaterial. The Court: Objection overruled and exception allowed. Mr. Foley: Proceed. The Court: You may answer if you can. A. *I do know the reputation of the place as to liquor and that there has been liquor kept there.* The Court: It is twelve o'clock, gentlemen, we will stand adjourned until 1:30." (Italics ours.)

At the afternoon session, the court directed the reporter to read the questions and answers to which

counsel for appellant had objected at the morning session. The court thereupon directed that the objections of appellant's counsel be sustained, that all of the foregoing testimony be stricken except that we have italicized and instructed the jury to disregard the answers to the questions. It is clear that the court intended to strike all of the testimony; however, in the re-reading of the questions and answers, it appears that the following was overlooked by the court:

"A. We went there on a tip that, if we would go there between the hours of eleven and twelve, or from that up to one o'clock, we would see them unload the whiskey. Q. Did the night garageman say that this transaction had occurred at previous times? A. He said he had seen it happen several times. . . . A. I do know the reputation of the place as to liquor, and that there has been liquor kept there."

The error, if any, in admitting the testimony as to the reasons for the officers' presence in the vicinity of the hotel the night they arrested the appellant, was harmless, as the fact which the state intended to prove by that testimony, the legality of the arrest without a warrant, was proved by other competent testimony. In *State v. Scott,* 143 Wash. 166, 254 Pac. 851, a jointist case, a witness was permitted to testify, over objection of appellant, that his reasons for investigating liquor activities at appellant's place of business were because he

". . . was in receipt of numerous complaints from residents in the vicinity and relatives of people that claimed that their relatives and people in the vicinity were buying liquor there, and the place was causing a great deal of disturbance in the neighborhood."

In that opinion, it was stated:

"The reason why the officer testifying began an investigation into the 'liquor activities' at the appellant's

96

place of business may not have been very material, but it is impossible to see how the reason given could have affected the verdict of the jury one way or the other. The admission of immaterial testimony constitutes reversible error only when it is prejudicial (*Crane v. Dexter Horton & Co.,* 5 Wash. 479, 32 Pac. 223; *State v. Nelson,* 39 Wash. 221, 81 Pac. 721; *State v. Case,* 88 Wash. 664, 153 Pac. 1070); and we cannot hold the testimony here thought objectionable to be prejudicial."

The testimony as to the reputation of the hotel as a place where liquor had been kept should have been rejected upon the ground of irrelevancy. The practice of the hotel in keeping liquor had no connection with appellant. No charge was made of maintaining a joint in that building nor is there any evidence in the record that the hotel was the rendezvous of one of the distributing points of a liquor ring. The court failed in its attempt to strike the testimony, the following being overlooked:

"I do know the reputation of the place as to liquor, and that there has been liquor kept there."

The appellant's guilt was conclusively established by competent evidence. He admitted his guilt before he was arrested. He had been convicted twice previously of violation of the liquor law. His reputation, not that of the hotel, was no doubt an important factor in the minds of the jury in considering the evidence. The testimony, which appellant insists was incompetent, was not prejudicial to the appellant and its admission does not constitute reversible error.

Complaint is made of the refusal of the court to give the following requested instruction:

"The jury are instructed that the burden is on the state to establish by evidence, and beyond a reasonable doubt, that the defendant knew, prior to his arrest,

that the suitcase referred to in the testimony contained intoxicating liquor."

The assignment is without merit. The court by instruction No. 7 properly instructed the jury as to reasonable doubt on this phase of the case, and whether the appellant knowingly had possession of intoxicating liquor was properly covered by the court's instruction No. 5 that the word "possession" as used in the instructions,

" . . . means knowingly having control of the thing possessed, with knowledge on the part of the possessor of the nature and character of such thing, . . ."

By instruction No. 7, the jury were instructed that, if—

" . . . after considering all the evidence in the case, you entertain a reasonable doubt whether the defendant did, as charged, have in his possession intoxicating liquor with intent to unlawfully sell, barter and exchange the same, your verdict will be not guilty."

Appellant complains that the court did not instruct the jury that no inference of guilt should arise against appellant because of his failure to testify. The court was not required to give such instruction unless requested. *State v. Pavelich,* 150 Wash. 411, 273 Pac. 182; 153 Wash. 379, 279 Pac. 1102.

The judgment is affirmed.

BEALS, MAIN, and PARKER, JJ., concur.