PRICE *v.* STATE

[No. 20, September Term, 1961.]

30

*Decided November 17, 1961.*

*Motion for rehearing filed December 18, 1961, denied January 8, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, MARBURY and SYBERT, JJ.

*Juanita Jackson Mitchell* and *Archie D. Williams* for the appellant.

*Robert F. Sweeney, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *George Helinski* and *James W. Murphy, Assistant State's Attorneys,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, Price, was convicted in a trial by the court, sitting without a jury, of separate assaults on two Baltimore City police officers and was sentenced to six months' imprisonment. He appeals.

The actual legal issues are narrow, and they are the only issues properly before this Court on this appeal. They are: first, whether the appellant was lawfully arrested or was properly resisting unlawful arrest; second, whether there were such discrepancies in the testimony of the prosecution witnesses that the defendant's motions for directed verdicts on the assault charges should have been granted. (Such a motion was granted as to a third charge, disturbing the peace.)

We shall take up the second of these contentions first.

Our review of the evidence indicates to us that the discrepancies in the testimony, such as the exact sequence of events and the precise place where they occurred, are of relatively slight importance and do not conflict in any material respects with the general statement of facts which we set out below. We therefore hold this contention of the appellant to be untenable. *Williams v. State,* 223 Md. 339, 340, 164 A. 2d 467; *Mason v. State,* 225 Md. 74, 76, 169 A. 2d 445; *Dyson v. State,* 226 Md. 18, 21, 171 A. 2d 505.

We now turn to the first and principal question. The State offered evidence, which, if believed, was sufficient to show the matters set forth below in this paragraph. As a result of a complaint initiated by a tenant in a twelve-apartment residence at 714 Madison Avenue in Baltimore, police headquarters sent out an order at 2:18 A.M. to two officers in a nearby police car to investigate a report that there was a prowler at the above address. Upon receipt of this call these officers, Goetzke and Staniewski, proceeded at once to the place directed, and on arrival were joined by a third officer, Wotjek, a foot patrolman. Goetzke (in the lead) and Wotjek (following) entered a lighted vestibule at No. 714. This vestibule is about five by seven feet and has an outer and an inner door. In the vestibule they found the appellant, Price. As they approached, Price was facing the inner door, on which so called "pry marks" were visible, which Goetzke thought appeared to have been made in an effort to pry the door open. Goetzke asked Price whether he lived there, Price murmured some unintelligible reply and made an immediate rush to get away. Goetzke at once tried to grab him. A struggle ensued in which Price struck, kicked and knocked down each of these officers and succeeded in breaking loose for a moment. Price was caught almost at once by Officers Staniewski and Goetzke and was subdued by the officers with the considerable aid of their night sticks. Price was then put in a police cruising patrol vehicle and was taken to a hospital. Goetzke says that Price again attacked him en route. Goetzke received treatment at another hospital a little later for injuries which he had received.

Price's account of events is quite different. He claims that

the police inquiry as to whether he lived at 714 Madison Avenue was made in an offensive manner, that he answered "No," and that the officers forthwith started to beat him over the head with their night sticks. He also claims that the violence at the time of arrival at the hospital was entirely on the part of the police, who, he says, threw him out of the police patrol and walked on him. As to the last episode he is corroborated by the testimony of a nurse at the hospital, who, however, could scarcely have been in a position to see what preceded his being thrown out of the patrol cruiser, if he was in fact thrown out.

At the trial, but certainly not during the brief moment preceding or during the struggle at 714 Madison Avenue, Price claimed that he had entered the vestibule only to get warm preparatory to continuing on his way home on a cold and snowy night. He said that he had taken a cab somewhere on Poplar Grove Street, which is in the western part of Baltimore, to go to his home in the Mt. Winans area, which is in the southern or southwestern part of the City. The trial judge noted that 714 Madison Avenue was far off a direct route between these two points and evidently did not believe the appellant's explanation of how he happened to be at the Madison Avenue address.

As the foregoing recital indicates, some of the facts are undisputed; as to others there is a sharp conflict of testimony. We think, as did the trial judge, that "[t]he vital question is what happened at 714 Madison Avenue." As to the conflicts, he believed the police officers' account of what happened there, taking note of the minor discrepancies above referred to. We find no error—much less any clear error—in his doing so; and, therefore, his findings based upon the evidence as to what occurred are not to be set aside by us. Maryland Rule 741 c; *Hicks v. State*, 225 Md. 560, 561, 171 A. 2d 722; *Reed v. State*, 225 Md. 566, 573, 171 A. 2d 464; *Dyson v. State, supra*, 226 Md. at 20-21 (to cite only three of many recent cases). We accordingly apply what we take to be the law to the facts as the trial court found them.

In determining the lawfulness of the arrest, we must do so with relation to the time when it occurred. It seems clear that

there had been no arrest—merely an accosting—prior to Price's break. See *Cornish v. State,* 215 Md. 64, 137 A. 2d 170, as to the difference. The appellant makes much of the statements of the officers to the effect that the arrest took place out on the sidewalk. We think, however, that the officers were merely stating when it was effective practically, and that the arrest, in a legal sense, occurred when Officer Goetzke first grabbed the appellant in the vestibule, even though he did not then succeed in holding him. See the *Cornish* case and cases therein cited, and Hochheimer, *Criminal Law* (2nd Ed.), § 64.

When the police officers found the appellant in the vestibule, they were there in response to a call about a prowler (cf. *Drouin v. State,* 222 Md. 271, 160 A. 2d 85, a burglary case), they were aware of the very early hour of the morning, the marks on the door looking like pry marks were visible and they found the appellant at and more or less facing the inner door. These facts plainly gave the officers good cause to question the appellant as to why he was there and what he was doing. Instead of explaining, he muttered something and bolted immediately. Flight, though not conclusive, is usually evidence of guilt. *Clay v. State,* 211 Md. 577, 128 A. 2d 634; *Tasco v. State,* 223 Md. 503, 165 A. 2d 456; cert. den. 365 U. S. 885. With flight added to the other facts already apparent to the officers, even if not before (and as to the prior situation we express no opinion), the officers, we think, had probable cause to believe that the appellant had just been engaged, in their presence, in committing or attempting to commit burglary. The basis for determining probable cause in felony cases has recently been restated in *Mulcahy v. State,* 221 Md. 413, 422, 158 A. 2d 80, citing *Edwards v. State,* 196 Md. 233, 237, 76 A. 2d 132, and *Brinegar v. United States,* 338 U. S. 160. As the *Brinegar* case shows, it means a reasonable ground for belief of guilt, which is less than evidence which would justify condemnation or conviction, but must be more than mere suspicion. "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of rea-

34

sonable caution in the belief that' an offense has been or is being committed." (338 U. S. at 175-176.)

One question which is suggested or touched upon rather lightly in the appellant's brief, but is not discussed by the State's brief, is whether or not there is a right to detain for questioning a person found in such suspicious circumstances as those in which the appellant was found. Inferentially, the learned trial judge seems to have been of the opinion that the officers could detain the appellant for an explanation on the spot. Certainly, this would be less drastic than an actual arrest and, presumably, less objectionable from the appellant's point of view. There seems, however, to be no decision of this Court with regard to a right of police officers to detain a suspect for questioning without an actual arrest (but see Kauffman's comment in *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 159 (rule 5) ; and we find it unnecessary here to undertake to decide such a question, for if the facts would justify an arrest, *a fortiori,* they would justify a detention for questioning.

On the general subject of detention for questioning without a formal arrest, see *Culombe v. Connecticut,* 367 U. S. 568 (involving interrogation during extended detention in police custody without formal arrest, and resulting confessions) ; Moreland, *Modern Criminal Procedure* (1959), Ch. 4; and Warner, *The Uniform Arrest Act,* 28 Va. L. Rev. 315, 317-324.

The only offenses charged in the indictments before us are assaults and batteries. There are no charges of burglary or of attempted burglary, or of any violation of the "rogue and vagabond" statute (Code (1957), Art. 27, Sec. 490) ;[1] and there is no finding that any such offense had actually been committed by the appellant or by anyone else. Nor does the State raise any contention that if the arrest were unlawful, the appellant would be nonetheless guilty of assault because of the use of excessive force to resist such an arrest.

---

1. As to this section, there is no evidence that any burglar's tools were found on the appellant, nor was any issue presented for determination of whether or not the appellant was "in or upon any dwelling house * * * with an intent to steal any goods or chattels."

As the case is presented to us, there is no contention that the appellant was guilty of burglary, or even that the appellant was actually attempting to commit burglary, notwithstanding appearances leading the officers reasonably to believe that he was. The determinative question with regard to the lawfulness of the appellant's arrest, in our view, is whether or not the officers' reasonable grounds for believing that the appellant had been engaged, in their presence, in committing or in attempting to commit burglary just before they arrested him, would authorize them to arrest him without a warrant. If attempted burglary were itself a felony, the case would present no problem, for the arrest would be unquestionably proper. *Mulcahy v. State, supra,* 221 Md. at 421, and cases there cited; Kauffman, *op. cit. supra,* p. 159. Nor would there be any problem with regard to the lawfulness of the arrest if the appellant had been tried and convicted for the crime of an attempt to commit burglary (such an attempt constituting a misdemeanor [2]), since a peace officer may make an arrest without a warrant for a misdemeanor which has been or is being committed in his presence or view, if he reasonably believes the person arrested to have committed it. See, *inter alia*: *Mitchell v. Lemon,* 34 Md. 176; *Roddy v. Finnegan,* 43 Md. 490; *Heyward v. State,* 161 Md. 685, 158 A. 897; *Blager v. State,* 162 Md. 664, 161 A. 1; *Callahan v. State,* 163 Md. 298, 162 A. 856; *Romans v. State,* 178 Md. 588, 16 A. 2d 642, cert. den. 312 U. S. 695; *Bass v. State,* 182 Md. 496, 35 A. 2d 155; *Kershaw v. State,* 199 Md. 135, 85 A. 2d 783; *Griffin v. State,* 200 Md. 569, 92 A. 2d 743, cert. den. 345 U. S. 907; *Brown v. State,* 207 Md. 282, 113 A. 2d

2. This State adheres to the rule that only offenses which constituted felonies at common law, plus such as the General Assembly has specifically designated as such, are felonies, and that all other offenses (except treason), regardless of their gravity or of the severity of the punishment which may be imposed, are misdemeanors. See note on *Sugarman v. State,* 173 Md. 52, 195 A. 324, in 2 Md. L. Rev. 147, at 153-154. The relevance of the Maryland distinction between these two kinds of offenses to problems of the law of arrest was recently commented upon in *Oden v. State,* 222 Md. 325, 329, 159 A. 2d 867.

916; *Davids v. State,* 208 Md. 377, 118 A. 2d 636 (rule stated, not found applicable); and Kauffman, *op. cit. supra,* rule 6, pp. 160-161.

In typical cases, such as those just cited, where the general rule has been stated as above and the arrest has been upheld, only misdemeanors have been involved. This has also been the situation in other cases which have come to our attention where the rule has been recognized, but the arrest has been held improper. See, for example: *Sugarman v. State,* 173 Md. 52, 195 A. 324; *Turner v. State,* 195 Md. 288, 73 A. 2d 472; *Walker v. State,* 195 Md. 412, 73 A. 2d 508; and *De Angelo v. State,* 199 Md. 48, 85 A. 2d 468. See also *Williams v. State,* 204 Md. 55, 64, 102 A. 2d 714.

Such is not the situation here. The activity in which the officers reasonably believed the appellant to have been engaged—burglary or attempted burglary—either constituted a felony or, if consummated, would do so. The reason underlying the usual rule in misdemeanor cases denying the right of a peace officer to arrest except for a misdemeanor committed in his presence was thus stated in *Scarlett v. State,* 201 Md. 310, 317, 93 A. 2d 753: "The general rule of the common law is that, in order to prevent illegal restraint for trivial causes, no arrest may lawfully be made for a misdemeanor, unless it is committed in the presence of the arresting officer, or until a warrant has been issued by a magistrate." No one, we suppose, would consider an arrest for an apparent (even if not actual) attempt, in the presence of an officer, to commit burglary, an arrest for a trivial cause; and the suggested basis for the general rule is, therefore, lacking here.

Perhaps because the matter of arrest is largely regulated by statute in other jurisdictions, (see A. L. I. Code of Criminal Procedure, pp. 231, et seq.), we find relatively few cases and texts dealing with the problem before us as a matter of common law. It would seem to us an over refinement to deny the power of a peace officer to arrest without a warrant for a felony which he reasonably believes is being committed in his presence because, at the moment when the apparently illegal activity is interrupted, the supposed offense has not been so far consummated as to show that it has been completed and

not merely attempted. To deny the right of a peace officer to arrest because of such a distinction would, we think, unduly hamper the work of the police in protecting the public and preventing serious crime and the escape of offenders. Cf. *Mitchell v. Lemon, supra,* 34 Md. at p. 181, and *Romans v. State, supra,* 178 Md. at 599-600. In the latter case, where only a misdemeanor and not a felony was involved, this Court said (at p. 599): "The general rule is that an officer of the law may not arrest a person for a misdemeanor without a warrant, but, on principle and authority, if an officer of the law detects a person committing a misdemeanor or engaged in its attempt he should do something to prevent it or, failing in this, should bring him to justice." Likewise in *Mitchell v. Lemon, supra,* and in *Roddy v. Finnegan, supra,* 43 Md. at 504-505, (each involving only a misdemeanor), the court laid emphasis on the power and duty of the Baltimore City police force to prevent crime. See Charter and Public Local Laws of Baltimore City, 1949 Ed., Sec. 530 (since amended without affecting such power and duty.) To strike a balance between individual freedom and the protection of society is often not an easy task and the comments in the *Romans* case just referred to point up some of the practical aspects of the problem where prompt police action is necessary. They seem apposite here.

Perhaps much the same practical considerations underlie the common law rule that a peace officer may arrest without a warrant to prevent an imminent breach of the peace,[3] (*Byrd v. Commonwealth,* 158 Va. 897, 902, 164 S. E. 400; *State ex rel. Thompson v. Reichman,* 135 Tenn. 653, 669, 188 S. W. 225, 231; *Pavish v. Meyers,* 129 Wash. 605, 225 P. 633; 4

---

3. We think it unnecessary to decide whether there was in this case such a threat or likelihood of violence or of causing violence as to present the danger of an imminent breach of the peace. See the definition of a breach of the peace in the Restatement, *Torts,* § 116, Comment *a,* where it is said: "The use of force, or the threat of an immediate use of force, towards the person or land or chattels of another which constitutes a crime is a breach of the peace." See also *Wanzer v. State,* 202 Md. 601, 609, 97 A. 2d 914, and 4 Am. Jur., *Arrest,* § 30.

Wharton, *Criminal Law and Procedure* (Anderson Ed., (1957), § 1597), or where a "dangerous wounding" may result in a felony (4 Blackstone, *Commentaries* (Oxford, 1769), Ch. 21, Sec. 2, p. 289; 4 Stephen's *Commentaries on the Laws of England* (18th Ed., Jenks (1925), p. 275). They may also underlie the ancient rule which authorized a peace officer to arrest "nightwalkers" without a warrant. One definition of a "nightwalker" is "one who walks or roves about in the night, as a thief, a prostitute, etc. * * *." (New Century Dictionary, 1938 Ed.) The term carries perhaps much the same connotation as the word "prowler" does in modern speech. Since the term would seem to be applicable to the appellant on the evidence in this case, his arrest without a warrant may well have been authorized by this ancient law.[4]

---

4. The right of a peace officer to arrest "nightwalkers" without a warrant is stated in a number of authorities, among them: 4 Blackstone, *Commentaries* (1769 Ed.), *supra*, p. 289 (Lewis Ed., 1922, p. 292); 2 Hale, *Pleas of the Crown*, 89; Kauffman, *op. cit. supra*, at 155, n. 135; Hochheimer, *Criminal Law* (2nd Ed.), Sec. 67, p. 83. See also *Miles v. Weston*, 60 Ill. 361, 366. The learned editors of the 9th, 10th and 11th English editions (the three most recent) of *Russell on Crime* (see, for example, the 11th Ed., Vol. 1, p. 735) ascribe this ancient rule to a statute (5 Edw. 3, cap. 15, cap. 14 being apparently intended) which clearly would authorize such arrests. In England this Act was repealed as obsolete in 1856 by the statute of 19 & 20 Vict., c. 64, and has been largely supplanted by other statutes. Hale seems to rely upon the statute of 5 Edw. 3, cap. 14, but 2 Hawkins, *Pleas of the Crown* (8th Ed. 1824) Ch. 13, sec. 6, states that 5 Edw. 3, cap. 14 was a mere affirmance of the common law. Blackstone (1769 Ed.), *op. cit. supra*, refers to a prior statute of similar import, 13 Edw. 1, cap. 4 (which is referred to in the statute of 5 Edw. 3, cap. 14) and cites 2 Hale, *op. cit. supra*, at 98. In view of the statement in Hawkins, *op. cit. supra*, it may be, but it is by no means clear, that such arrests were regarded as authorized by the common law just before the Revolution and so were incorporated into our law. (Md. Declaration of Rights, Art. 5). The statute of 5 Edw. 3, cap. 14 is not included among the British Statutes in force in Maryland contained in Kilty's Report. (That Report does not list it at all, not even among either class of statutes not in force in Maryland). The statute of 13 Edw. 1, cap. 4, on the other hand, is included in full in 1 Alexander's British Statutes (Coe's Ed.), pp. 208 et seq., and might

In the view we take of this case, we need not determine whether it applies or not.

We rest our decision upon the ground that the arrest of the appellant was lawful because the peace officers making the arrest had probable cause at that time to believe that the appellant was then engaged or had just been engaged, in their presence, in the commission of a felony (burglary) or in an attempt to commit a felony—the latter branch of the rule relating to attempts being that which we regard as applicable here. We think that our statement of the rule as to felonies and attempted felonies is supported by authority. See Wilgus, *Arrest without a Warrant,* 22 Mich. L. Rev. 673, at 674; 10 Halsbury's *Laws of England* (3rd Ed., 1955), *Criminal Law,* Sec. 634; 2 Hawkins, *Pleas of the Crown,* c. 12, s. 19; Glanville Williams, *Arrest for Felony at Common Law,* 1954 *Criminal Law Review* (London), pp. 421-422; *Rex v. Hunt,* 1 Mood. 93 (attempted housebreaking in the night); Perkins, *Law of Arrest,* 25 Ia. L. Rev. 201, 230; 4 Am. Jur., *Arrest,* § 25, p. 19; *State v. Zupan,* 155 Wash. 80, 283 P. 671; *State v. Hughlett,* 124 Wash. 366, 214 P. 841; *Byrd v. Commonwealth, supra.*

Moreland, *Modern Criminal Procedure* (above cited), at pp. 50-51, in discussing questioning without arrest, states as the first class of cases in which officers may wish to question a man rather than arrest him at once "cases where officers catch private persons in situations where they may be reasonably suspected of having just committed or of being in the process of committing a crime, but the officer, because of the circumstances, hesitates to make an arrest without giving them an opportunity to rebut the suspicion—if they can do so—by answering a few questions." He then quotes these examples put by Warner in his article on The Uniform Arrest Act, *supra,* 28 Va. L. Rev. at 320:

thereby be thought to be incorporated into our law. However, the portion of it here possibly pertinent was not included by Kilty in his Report, and the reason for the inclusion of the whole of this statute in Alexander's British Statutes seems to have been to make clear the meaning of the portion regarded by Kilty as in force here. (See id. at 211).

"A man climbing into a window late at night may be the householder who has forgotten his key and does not want to disturb his wife, or he may be a burglar. A man who looks around furtively, tries the door of an automobile, steps in and seems unfamiliar with its mechanism, may or may not have a right to drive the car. Under such circumstances a passing officer ought to question the suspicious behavior."

Moreland then says: "Of course, the officer could make a valid arrest in each of these cases and take the man in * * *." These illustrations, as well as the illustration similar to Warner's first case above given by Kauffman, *op. cit. supra,* under his rule 5, pp. 159-160, are very similar to the instant case. The need for prompt action in such situations is recognized by Kauffman and by other writers and (as we have noted) by this Court.

The recognition of the right of a peace officer to make an arrest where he has probable cause to believe that an attempt to commit a felony is being committed in his presence is, we think, an application or possibly an extension of the right of an officer to arrest without a warrant where there is reasonable cause to believe that a felony has been committed (even though none has been), rather than as an extension of the right to arrest without a warrant where no more than a misdemeanor is involved or in prospect. To such extent, if any, as anything said in *Griffin v. State, supra,* particularly in the *per curiam* on motion for reargument (200 Md. at 77) relating to an officer's lack of power to arrest where he has only reasonable grounds ·to believe that a misdemeanor has been committed in his presence by the person arrested, may be inconsistent with our views just stated, the *Griffin* case must be considered as limited by this decision. See Kauffman, *op. cit. supra,* rule 7, p. 161, which seems inconsistent with the *Griffin per curiam* opinion. That opinion was rendered some years after Kauffman's article was written and did not refer to it. The *Griffin per curiam* opinion seems to deny the right of a police officer to make an arrest without a warrant

when he has probable cause to believe that a misdemeanor is being committed in his presence by the person arrested, but no offense is actually committed. Whether that is a correct exposition of the law today we need not decide in this case, and we leave that question open for future consideration. See *Davids v. State, supra,* 208 Md. at p. 384.

Since we hold that the appellant's arrest was lawful, it follows that his attacks upon the officers in an attempt to escape constituted assaults and batteries upon them. We find no error in his convictions therefor.

*Judgments affirmed, with costs.*