[1] Reported in 136 P.2d 165.
The only questions presented by this appeal arise out of the denial of defendant's motion to *Page 86 
suppress the search and seizure of a pistol, and its admission in evidence over defendant's objection.
The defendant lived a short distance from the complaining witness, Mrs. Violet Barnes. The two had been close friends for some time. On the evening of March 30, 1942, defendant went to the home of Mrs. Barnes. He had been drinking. At the time, she was entertaining her mother and some friends. She met him at the front door and refused to admit him. He said to her, "You can't do this to me," and he pulled a small automatic pistol from his pocket. Mrs. Barnes was not immediately frightened and told him to put the pistol away and go home; whereupon, he pointed the pistol at her and, repeating the statement, "You can't do this to me," added, "I'll shoot you." Her testimony then is as follows:
"Q. What, if anything, did you do? A. Well, I got frightened, and I ran through the bedroom. I have two doors there — and I ran right around again, and came right back to the door; and by that time he kind of went back like this, and I slammed the door shut."
Defendant left. A few moments later, he called Mrs. Barnes by telephone. A guest answered the telephone, and defendant asked the guest to tell Mrs. Barnes that he had been shot and that he wished Mrs. Barnes to come over to his home and take care of him. She did not do so.
Shortly after this telephone conversation, police officers, having a report of a shot having been fired, called on defendant at his home, where they found him wearing a bathrobe, and intoxicated. He denied having heard any shot, and the officers left. Later the same evening, having received a report of the happenings at Mrs. Barnes' house, the chief of police and another officer called upon defendant and inquired specifically if he owned or had in his possession a *Page 87 
small automatic pistol. He denied that he did, and showed the officers a rifle; whereupon, the officers left without making any search of the premises. Defendant had, in fact, shot himself in the thigh. Still later, on the same evening, he called a doctor, who had him taken to the hospital.
The next day, March 31st, a formal warrant of arrest was read to defendant at the hospital, charging him with the crime of second-degree assault committed upon Mrs. Barnes. The same day, the police officers had a number of conversations with the defendant, in which defendant admitted, in substance, most of the foregoing facts. He claimed that the so-called assault was all in the nature of a lark or a joke. He told the officers that he owned a small automatic pistol; that he had had it with him when he called upon Mrs. Barnes, but that it was not loaded at that time. He said that, after he returned from Mrs. Barnes' home, he had loaded the pistol and had accidently shot himself.
The following day, April 1st, a formal information was filed against defendant in the superior court, and his house was searched by the chief of police. The pistol was found on a shelf in the basement. It was loaded, but an empty cartridge was jammed in the mechanism. The pistol was identified by the complaining witness and admitted in evidence over the objection of defendant. His motion to suppress was denied. The police made no report of the discovery to the defendant. It was not shown that he learned that the police had possession of the pistol until after the trial had begun. Consequently, it is assumed that his motion to suppress during the course of the trial was timely.
The only witness who testified for the defense was the defendant himself. He told the same story of the *Page 88 
affair as he had told the police at the hospital. He reasserted that the whole affair was a joke and intended as such. He denied actually pointing the pistol at Mrs. Barnes or saying, "I'll shoot you."
[1] Defendant invokes Rem. Rev. Stat., § 2240-1 [P.C. § 9358-1]. This statute makes it unlawful for police officers to enter and search a private dwelling without authority of a search warrant issued upon a complaint as by law provided.
The question of the necessity for a search warrant in this kind of a case was passed upon by this court in State v. Much,156 Wn. 403, 287 P. 57. The rule therein laid down was adhered to in State v. Thomas, 183 Wn. 643, 49 P.2d 28, in which this court said (p. 646):
"In State v. Much, 156 Wn. 403, 287 P. 57, where the defendant was charged with murder, officers went to his home and, digging in his yard, found letters and money which were introduced in evidence against him at the trial. It was contended that these articles should not be received in evidence, for the reason that they were procured by the officers without authority of a search warrant, in contravention of his constitutional right. Commenting upon this contention, the court said:
"`It is contended by appellant that these articles should not have been received in evidence for the reason that they were procured by the officers without the authority of a search warrant in contravention of his constitutional rights, both under the Federal and state constitutions.
"`No statute has been cited, and we can find none, in this state authorizing the issuance of search warrants for the evidence of the instruments of a murder. Several statutes exist providing for and requiring search warrants for the search and seizure of intoxicating liquor, stolen goods, counterfeit coin, gaming apparatus and the like, but none conferring jurisdiction upon any magistrate to issue search warrants, the *Page 89 
subject-matter of which is the evidence or instruments of murder. There were circumstances indicating the guilt of appellant at the time of his arrest, and the searches were made by the officers after the arrest.
"`It is only unreasonable searches and seizures, without probable cause, that are forbidden. Carroll v. United States,267 U.S. 132. That the searches having been made upon probable cause, uncovered more and convincing evidence of the guilty connection of appellant with the heinous crime, is his misfortune; but it in no wise renders the evidence, so discovered, incompetent.'"
Earlier in the opinion, the court said:
"The appellant invokes Rem. Rev. Stat., § 2240-1 [P.C. § 9358-1]. This statute makes it unlawful for police officers to enter and search a private dwelling without the authority of a search warrant issued upon a complaint as by law provided. Thestatute, of course, has no application to a search made asincident to a lawful arrest." (Italics ours.)
Until these cases are overruled by this court, they determine this point of law against appellant.
[2] Appellant further contends that the instant search was not incident to the arrest because he was arrested while in the hospital, and was not present when the search was made. We have held differently. In State v. Evans, 145 Wn. 4, 258 P. 845, this court sustained a search, where the defendant was not arrested in his home, and the search was made later in his absence, while he was at the police station.
Webster's New International Dictionary gives the following definition of the word "incident":
"2. Law. Dependent on, or appertaining to, another thing (the principal); directly and immediately pertinent to, or involved in, something else, though not an essential part of it." *Page 90 
Under the authority of State v. Evans, supra, incident to
does not mean: "Coincidentally with, or aiding the course of, an arrest."
Much of the scientific investigation of murders and other felonies would be unlawful if the police were powerless to act without a search warrant, in view of the fact that search warrants cannot be issued for such purpose.
[3, 4] Defendant further contends that the admission of the pistol containing a jammed cartridge is prejudicial error, in view of defendant's testimony that the pistol was empty when he went to the complaining witness' home, and, therefore, not being in the same condition as when found by the officers, was inadmissible in evidence. Whether the pistol was loaded or not, is immaterial if the person at whom it was pointed did not know that it was not loaded, since the controlling factor is the state of mind of the assaulted person. Peasley v. Puget Sound Tug Barge Co., 13 Wn.2d 485, 125 P.2d 681; Howell v.Winters, 58 Wn. 436, 108 P. 1077; Allen v. Hannaford,138 Wn. 423, 244 P. 700.
The display of a pistol before the jury and its admission in evidence in the state's case in chief, could conceivably have great weight with the jury. It cannot be said, as a matter of law, that it did not influence the jury. It was therefore either not error or it was prejudicial error. We hold that it was not error.
The judgment is affirmed.
BEALS, BLAKE, and GRADY, JJ., concur.