[No. 29041.  Department Two.  October 11, 1943.]

THE STATE OF WASHINGTON, *Respondent,* v. DON WILCOX, *Appellant.*[1]

*E. M. Farmer,* for appellant.

*Lloyd Shorett* and *John J. Kennett,* for respondent.

BLAKE, J.—Defendant was convicted of second-degree burglary upon an information charging that, with intent to commit a crime therein, he "did break and enter a building known as Magicians' Club, located at 600 Union Street in the City of Seattle."  From judgment and sentence entered on the verdict, defendant appeals.

He claims the court committed error:  (1) in giving an instruction and in refusing to give an instruction requested by him;  (2) in denying his motions to suppress evidence

[1]Reported in 141 P. (2d) 876.

taken from his room on the day of his arrest; and (3) in denying his challenge to the sufficiency of the evidence.

■ *First.* Appellant has not set out the instructions (given and refused) in his brief, as required by Rule XVI, subd. 5, 193 Wash. 25-a. The claimed errors with respect to the instruction given and the instruction requested will not be considered. *State v. Hussey,* 188 Wash. 454, 62 P. (2d) 1350.

■ ■ *Second.* The burglary occurred some time between five and seven o'clock on the morning of January 8, 1943. The appellant was taken in custody (without warrant for arrest or search) at his room in a hotel located at the corner of Seventh avenue and Pike street about the middle of the same morning. The evidence which he moved to suppress (ninety-six dollars in quarters, some other coins, and a shoe) was seized as an incident to his arrest. The seizure was lawful if the officers had reasonable cause to believe that appellant had committed the burglary and that the property seized had evidentiary value. *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841; *State v. Zupan,* 155 Wash. 80, 283 Pac. 671. The officers who made the arrest made an investigation at the scene of the burglary, and learned the following facts, which led them to suspect appellant:

The Magicians' Club is located at 600 Union street. It has a rear entrance which leads to Sixth avenue. Appellant had sometime previous to January 8th been employed as a bartender at the club. The president, or manager, closed the club between five and six o'clock in the morning of that day—turning off the lights and locking the doors. Appellant had been in the club for some time prior to closing, and left with the manager. Shortly before closing up, the manager lent appellant five dollars on the latter's plea that "he needed it" as he "didn't get paid until Friday."

Just before seven, a boiler inspector entered the club. As he opened the door, a man ran past him and out the rear entrance. Following, he observed the fugitive, limping as he ran, run into a parking lot on Sixth avenue, about half

way between Union and Pike. The man's course, when last seen, was toward Seventh avenue. When the boiler inspector entered the club, the electric lights were all on.

Investigation revealed that two quarter slot machines had been broken open and their contents taken. The slot machines were located near the bar, upon which were found a screw driver and a hammer. These tools belonged to the club and were kept in a drawer behind the bar. The electric light switches were in a closet, or sort of junkroom, behind the bar and were so located that one unfamiliar with the premises would hardly be able to find them. The premises had been entered by breaking a hole in the wire glass which formed the upper part of the rear door and lifting the crossbar by which it was secured.

Taking all the foregoing facts into consideration, we think the officers had reasonable ground for believing that appellant committed the burglary. The motions to suppress the evidence were properly denied.

*Third.* In addition to the foregoing, the following facts were presented to the jury: When the officers went to appellant's room, they found two of his friends with him —a man and a woman. On the dresser the officers observed a woman's purse. Opening it, they found the ninety-six dollars in quarters and a half dollar. Appellant, according to one of the officer's testimony, then said: "She does not know anything about that money. I gave it to her to keep for me." At the trial, the woman testified:

"Q. Did he ask you to do anything with reference to the money? A. I was to take it. . . . Q. What did you do with it? A. I put it in my handbag. . . . Q. Did you ask him before where he got the quarters? A. Yes. Q. What did he tell you? . . . A. He said he didn't think I would like it. Q. He said if you knew where he got the money you would not like it? A. Yes."

Appellant signed a written statement, which contained the following:

"I met a man, whose name I don't want to mention, and he gave me a pocket full of quarters, which he asked me

to change into currency of larger denomination. I didn't ask him where he got them, but I did think he must have stolen them somewhere, or he wouldn't have had so many."

The explanation is far from convincing.

There was testimony to the effect that blood stains were found on the door jamb and glass where entry was effected to the Magicians' Club, and, also, that there were blood stains on one of the slot machines. When appellant was arrested, "There was some blood on the left hand and it had been skinned."

We think the evidence sufficient to sustain the verdict.

Judgment affirmed.

SIMPSON, C. J., and MALLERY, J., concur.

MILLARD, J. (concurring in the result)—I concur in the result. The appeal should be dismissed, because record was not filed within time in the office of the clerk of this court.

ROBINSON, J. (concurring)—Although I am still firmly convinced that the search and seizure involved in *State v. McCollum,* 17 Wn. (2d) 85, 136 P. (2d) 165, was illegal, I fully concur in Judge Blake's opinion in the instant case. The distinction between the *McCollum* case and this case is clear-cut and decisive. In this, the search and seizure was "incident" to the arrest. In the *McCollum* case, it was not.