[No. 54111–6.   En Banc.   June 15, 1989.]

THE STATE OF WASHINGTON, *Petitioner,* v. MARCUS DWAYNE PATTERSON, *Respondent.*

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard Melnick, Deputy,* for petitioner.

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for respondent.

*Norm Maleng, Prosecuting Attorney for King County,* and *William L. Downing, Senior Deputy,* amici curiae for petitioner.

*Richard Hansen* and *David Allen* on behalf of Washington Association of Criminal Defense Lawyers, amici curiae for respondent.

UTTER, J.—The State seeks review of a Court of Appeals decision affirming a trial court's suppression of evidence based on the State's failure to show that exigent circumstances necessitated searching a parked, secured, unoccupied car without a warrant. We reverse and find there were enough additional factors in this case to constitute "exigent circumstances."

The facts are stipulated. At 6:06 a.m. on November 16, 1982, Officers Abernathy and Krueger were dispatched to respond to a burglary at the American Music Company. Officer Krueger arrived at the scene within 30 seconds of dispatch. En route, Krueger noticed a white over blue Cadillac going the wrong way on a 1-way street two blocks from the music store. At the store, Krueger observed the display window was broken. He advised responding units about the white over blue Cadillac but did not give the license number or other identifying information. After the owner of the store arrived, he told Krueger that two "P.A. Boards" were missing.

At 6:11 a.m., Officer Abernathy located a white over blue Cadillac parked at an apartment complex 6 blocks from the music store. Officer Ferrell arrived shortly thereafter. The officers noticed a white amp pigtail hanging outside the right front door of the car. The treads of the car were wet but the sidewalls and hubcaps were dry. The ground under the car was dry. Without entering the car, the officers observed two stereo amplifiers on the passenger seat, one with a price tag attached and both apparently new. They also observed that the front floor mats were wet, the driver's side wetter than the passenger's side. The apartment

manager told the officers that her husband's car had been parked in the same parking space until shortly before 6 a.m. when he had left for work. The officers did not know the whereabouts of the driver of the vehicle.

Officers Kandoll and McNicholas joined Abernathy and Ferrell. No officer attempted to obtain a search warrant through any means. Officer Ferrell entered the car and found a receipt made out to Marcus Patterson in the glove box and an address book on the floorboard. A radio check showed the car registered to Victor Dolezal. The address book led the officers to Cheryl Thomas's apartment where they found Marcus Patterson. The officers arrested Patterson approximately 20 minutes after they had located the Cadillac. After being advised of his constitutional rights, Patterson stated that he understood them and confessed.

On November 19, 1982, Patterson pleaded not guilty to charges of second degree burglary and second degree theft. After he failed to appear for trial, he was arrested on a bench warrant in January 1986. He moved to suppress both the evidence found in his car and his confession. The trial court found that although the officers had probable cause to search the car, there were no exigent circumstances that made it impractical for the officers to obtain a warrant. Consequently, the court suppressed the evidence. Because the ruling on suppression disposed of the case, the trial court dismissed it with prejudice. The Court of Appeals affirmed the trial court's decision. We granted the State's petition for review.

A recent case from our sister state discusses the availability of constitutional protections where there is a parked, unoccupied car. *State v. Kock*, 302 Or. 29, 725 P.2d 1285 (1986). At 5:30 a.m., two officers were watching the parking and entry area of a store. They knew that the defendant, an employee, had no authority to remove merchandise from the store. At 5:42 a.m., the defendant left the store carrying a box covered with newspaper. He approached his car, removed something from the box, placed it in the car, and

partially covered the item with clothing. After the defendant returned to the store, the officers approached the car. Without entering the car, they could not identify the item. They opened the door, seized the item, and found it contained merchandise. An arrest of the defendant followed. 725 P.2d at 1286.

The Oregon court rejected an argument that this was a search incident to arrest and focused on the narrow issue that is also before us. They assumed there was probable cause for the search of the automobile, as exists in our case, but stated:

> We nevertheless hold that any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist.

*Kock,* at 33. The court relied on Oregon's constitution to decline to follow *California v. Carney,* 471 U.S. 386, 85 L. Ed. 2d 406, 105 S. Ct. 2066 (1985).

■ Our preexisting case law compels us to reach the same conclusion as the Oregon court in *Kock.* Pursuant to the unique language of our own constitution, we have carefully restricted automobile searches to balance an individual's privacy interest against a real state and societal need to search; mere convenience is simply not enough. *See Seattle v. Mesiani,* 110 Wn.2d 454, 755 P.2d 775 (1988) (an individual's privacy interest in a vehicle outweighed the State's interest in regulating vehicles by instituting a sobriety checkpoint program); *State v. Kennedy,* 107 Wn.2d 1, 726 P.2d 445 (1986) (an officer's "objective reasons" for believing an investigatee might be hiding a weapon, and a risk of danger to officers, warranted a *Terry* stop search for weapons within the immediate control of the investigatee or a companion); *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986) (potential danger to officers and destructibility of evidence warranted a bright–line rule for a search incident

to arrest); *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980) (search of a VIN [serial] number located inside the door of a parked, locked, unoccupied truck when the defendant was in custody violated Const. art. 1, § 7 and the Fourth Amendment).

Necessity, a societal need to search without a warrant, provides the underlying theme in these decisions. Against societal need, we balance privacy interests provided by article 1, section 7 of our own constitution. Both analysis under the factors outlined in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986), and scholarly commentary support our independent interpretation of that provision. *See Gunwall* (analyzing Const. art. 1, § 7); *see also* Nock, *Seizing Opportunity, Searching for Theory: Article I, Section 7,* 8 U. Puget Sound L. Rev. 331, 366 (1985).

In the areas of search incident to arrest and *Terry* stops, we found that concerns for the safety of officers and potential destructibility of evidence do outweigh privacy interests and warrant a bright–line rule permitting limited searches. *See State v. Stroud, supra; State v. Kennedy, supra.* However, the concerns are not the same when officers approach a parked, immobile, unoccupied, secured vehicle. In such a situation no bright–line rule is necessary. If exigencies in addition to potential mobility exist, they will justify a warrantless search.

■ Given this background, the only remaining question is whether there were particularized exigent circumstances that would excuse the officers' failure to seek a warrant. The facts of this case provide such circumstances when we focus on the proximity in time and place and on the immediacy of the defendant's flight from the car.

Only 5 minutes elapsed between the time the officers responded to the alarm and Officer Abernathy located the white over blue Cadillac described by Officer Krueger. When found, the car was within six blocks of the music store. Several factors indicate that the suspect had, within less than 5 minutes, fled the vehicle and might be hiding in the immediate area. The treads of the car were wet, but the

sidewalls and hubcaps were dry; the ground under the car was dry; and the front floor mats were wet. The apartment manager had told the officers that her husband's car had been parked in that parking space until shortly before 6 a.m. The white amp pigtail hanging out of the door indicated the occupant had left in a hurry.

The freshness of the pursuit is apparent. Had the officers delayed the search by applying for a warrant, the suspect could have moved far from the immediate scene. The evidence found by searching the car enabled the officers to arrest the suspect in the neighborhood within 20 minutes of finding the car.

Taken together, these factors constitute exigent circumstances sufficient to allow a warrantless search of a parked, secured, unoccupied vehicle. Courts have found exigency "when there is an immediate need to continue a promising criminal investigation." *McCary v. Commonwealth,* 228 Va. 219, 228, 321 S.E.2d 637, 642 (1984) (listing decisions). "This exigency is said to be 'within the spirit, though not the text, of the "hot pursuit" exception.'" *McCary,* at 229 (quoting *United States v. Robinson,* 533 F.2d 578, 583 (D.C. Cir. 1975), *cert. denied,* 424 U.S. 956, 47 L. Ed. 2d 362, 96 S. Ct. 1432 (1976). In both *McCary* and *Robinson,* the courts focused on the gravity of the offense (bank robberies); the immediacy of the investigation (cars found within 1 to 2 hours); the belief that the suspects were armed; the likelihood that the suspects, who were at large, would escape; and peaceable entry.

In this case there is no indication that the suspect was armed, and the offense may be somewhat less grave. However, as the *Robinson* court noted, no one factor is conclusive. 533 F.2d at 584. Similarly, factors will be weighted differently in varying fact patterns. Here, the time frame and probability that the defendant was nearby, though not conclusive, deserve significant weight. There was a need to proceed as quickly as possible to apprehend the defendant who had burglarized the store only minutes before the

search. *See Love v. State,* 487 S.W.2d 677, 678 (Tenn. Crim. App. 1972).

Therefore, we reverse the Court of Appeals and remand for continuation of the trial.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, PEARSON, and SMITH, JJ., concur.

DORE, J. (concurring)—I concur in the result reached by the majority, but I write separately because the analysis presented in its opinion unjustifiably expands the warrant requirement for automobile searches in this state. While the majority holds that a warrantless automobile search was justified in this case, dicta in its opinion suggests that such searches will be upheld only in rare circumstances. Majority at 735, 736. Furthermore, the majority's analysis places the burden on law enforcement officials to show, in each individual case, that the warrantless automobile search was justified. Through this dicta and skewed logic, the majority effectively overrules *State v. Stroud,* 106 Wn.2d 144, 152, 720 P.2d 436 (1986), which formulated a much broader authorization for warrantless automobile searches.

In *Stroud,* we abandoned case–by–case analysis and committed ourselves to developing per se, bright–line rules in this area. We recognized that case–by–case analysis of warrantless automobile searches requires police officers to predict, in effect, how a court sitting after the fact will gauge their situation when close calls concerning searches are made in the field. We saw then that such a demand is unreasonable in itself and that, by creating uncertainty, it necessarily harms both effective law enforcement and civil liberties. *Stroud,* 106 Wn.2d at 152. I cannot understand how that obvious conclusion escapes the majority now.

The majority's error is particularly unfortunate because this case presents an excellent opportunity to finish the task we undertook 3 years ago. The facts presented here permit us to define a bright–line rule to govern automobile

searches under exigent circumstances; a rule which would complement the bright–line rule on searches incident to arrest which we articulated in *Stroud.* For reasons set out below, I propose the following rule: A search of the passenger compartment, including an unlocked glove compartment, may be conducted without a warrant whenever probable cause to conduct the search arises contemporaneously with the stop or initial open–view inspection of the subject automobile. This rule would validate the search challenged here. Accordingly, I would reverse the Court of Appeals and remand for trial on the merits.

### Warrantless Automobile Searches Under Const. art. 1, § 7

Rather than advancing the development of a clear, reliable standard for warrantless automobile searches, the majority has lurched backward. To see this, it is helpful to have an overview of the applicable law.

Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." We held early on that the term "private affairs" encompasses "the person . . . and the possession of his automobile and all that was in it, while upon a public street . . ." *State v. Gibbons,* 118 Wash. 171, 187, 203 P. 390 (1922).

While *Gibbons* imposed a warrant requirement on all automobile searches, we soon recognized a broad exception to that requirement. Strictly speaking, it was not a separate "automobile exception" like the federal rule, but only a particular application of the general exception for searches incident to arrest.

It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged. If a search may be made of the person or clothing of the person lawfully arrested, then it would follow that a search may also be properly made of his grip or

suitcase which he may be carrying. From this it seems to us to follow logically that a similar search, under the same circumstances, may be made of the automobile of which he has possession and control at the time of his arrest.

*State v. Hughlett,* 124 Wash. 366, 370, 214 P. 841 (1923). *See also State v. Cyr,* 40 Wn.2d 840, 843, 246 P.2d 480 (1952). *Cf. Carroll v. United States,* 267 U.S. 132, 151, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925).

Given the broad rationale of *Hughlett,* it was construed for many years to authorize automobile searches incident to arrest regardless of where the suspect actually happened to be at the time of the search. *See, e.g., State v. McCollum,* 17 Wn.2d 85, 136 P.2d 165, 141 P.2d 613 (1943) (arrestee in hospital). Later, however, we restricted the scope of automobile searches to the "immediate environs" of the suspect at the time of arrest. *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962). In this we anticipated the restrictions placed on searches incident to arrest by the United States Supreme Court in *Preston v. United States,* 376 U.S. 364, 367, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964), wherein the Court held that, under the Fourth Amendment, a search beyond what is necessary to seize weapons and prevent the destruction of evidence is not permissible without a warrant.

We explicitly incorporated *Preston*'s limitations into our analysis under Const. art. 1, § 7 in *State v. Ringer,* 100 Wn.2d 686, 699, 674 P.2d 1240 (1983), *overruled in part in State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986).

Based on our understanding of Const. art. 1, § 7, we conclude that, when a lawful arrest is made, the arresting officer may search the person arrested and the area within his immediate control. *See State v. Michaels, supra* [60 Wn.2d 638, 374 P.2d 989 (1962)]. A warrantless search in this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested.

In this respect, *Ringer* merely confirmed a trend begun 23 years earlier in *Michaels.*

However, *Ringer* also marked a departure from our earlier line of cases. Where from *Hughlett* on we had analyzed warrantless automobile searches solely under the "incident to arrest" exception, *Ringer* went on to approve an exception based on exigent circumstances. Like the earlier analysis, this too was not a separate automobile exception to the warrant requirement, but a well established general exception applied to the case of automobiles.

> We have recognized . . . that where police have probable cause to conduct a search, they may do so without a warrant when *"they are confronted by emergencies and exigencies* which do not permit reasonable time and delay for a judicial officer to evaluate and act upon probable cause applications for warrants by police officers." *State v. Smith,* 88 Wn.2d 127, 135, 559 P.2d 970 (1977).

100 Wn.2d at 701. The existence of exigent circumstances was to be determined in a case–by–case inquiry into the "totality of the circumstances". The burden of showing exigent circumstances was placed on the State. 100 Wn.2d at 701.

*Ringer* was a major advance in the evolution of automobile search doctrine under Const. art. 1, § 7, because it carefully defined and defended two grounds on which warrantless searches of automobiles could be justified. However, within 3 years we reexamined *Ringer* and overruled it in part. *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986).

The defect in *Ringer* that prompted our reconsideration was its "totality of the circumstances" standard. While that case–by–case approach arguably permitted courts to decide warrantless search cases with great precision—weighing a range of factors and making fine distinctions—it required police officers, in effect, to predict how all the second–guessing would come out. If the officers, acting in good faith in a difficult situation, happened to judge their situation

differently from the reviewing court, an otherwise proper, fruitful investigation would be ruined. If the police wished to avoid this risk, their only option was to adopt an overly cautious approach to automobile searches. Either way, effective law enforcement suffered. Thus, while *Ringer*'s holding that exigent circumstances could justify a warrantless automobile search was basically sound, the terms of that holding—the "totality of the circumstances" test for exigencies—undermined it.

Consequently, Justice Goodloe's opinion in *Stroud* articulated a bright–line rule to govern warrantless automobile searches.

> To weigh the actual exigent circumstances against the actual privacy interests on a case–by–case basis would create too difficult a rule to allow for both effective police enforcement and also protection of individual rights. However, a reasonable balance can be struck. During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

106 Wn.2d at 152.

While four Justices signed two separate opinions in *Stroud,* a clear majority voted to overrule *Ringer* and to abandon a case–by–case approach to warrantless automobile searches. Justice Durham submitted a separate opinion, also signed by four Justices, in which she wrote:

> There are conceptual difficulties for courts, as well as practical difficulties for the police, in applying *Ringer*'s case–by–case analysis of the permissible scope of an automobile search incident to arrest. . . .
>
>     . . .
> At any rate, *Ringer*'s case–by–case approach to search and seizure questions appears, upon reflection, to be theoretically unsound. I agree with the majority that a

clearer set of rules is needed to aid the police. Majority opinion, at 150–51.

106 Wn.2d at 153, 166–67 (Durham, J., concurring).

The question which *Stroud* raises, however, is whether it overruled the "totality of the circumstances" test for both of *Ringer*'s grounds, or only for searches incident to arrest.

### THE MAJORITY HAS TAKEN A STEP BACKWARD

The majority opinion confines *Stroud* to the narrowest possible interpretation. In taking this position, the majority abandons the attempt to provide law enforcement with a workable standard for warrantless automobile searches and forces police officers to cope once again with the impossible situation prevailing under *Ringer*.

The majority reads *Stroud* as addressing only the "incident to arrest" part of *Ringer*. It states *Stroud*'s holding this way: "[P]otential danger to officers and destructibility of evidence warranted a bright–line rule for a search incident to arrest". Majority, at 734–35. It goes on to say:

> In the areas of search incident to arrest and *Terry* stops, we found that concerns for the safety of officers and potential destructibility of evidence do outweigh privacy interests and warrant a bright–line rule permitting limited searches. *See State v. Stroud, supra; State v. Kennedy* [107 Wn.2d 1, 726 P.2d 445 (1986)].

Majority, at 735. According to the majority, then, *Stroud* overruled the case–by–case "totality of the circumstances" approach *only* as it might apply to the question whether the warrantless search was truly incidental to an arrest. For example, *Stroud* eliminates the question whether certain areas or objects actually were within the suspect's reach during the arrest. Under the majority's interpretation though, *Stroud* has no bearing on the "exigent circumstances" leg of *Ringer*.

Strictly speaking, the majority is correct. The search challenged in *Stroud* was made incident to an arrest. There was no sign of exigency in the record and the State did not attempt to justify the search with a showing of exigent circumstances, as *Ringer* would have permitted. We are free,

in terms of stare decisis, to do what the majority has done: to adopt a bright–line rule to govern the "incident to arrest" inquiry and a case–by–case, totality of the circumstances rule to govern the "exigent circumstances" issue.

The only question is whether it makes any sense to do so.

Abolishing *Ringer*'s "totality of the circumstances" approach for one of its grounds but not for the other accomplishes nothing. The danger we are concerned with is uncertainty. The "totality" approach places the police in a dilemma, forcing them to risk ruining good investigations or to refrain from conducting searches they would otherwise make. Clearly, unless a clear rule is provided for *both* grounds on which a warrantless search might be conducted, the uncertainty has not been removed. The dilemma has not been resolved. The harm to law enforcement has not been avoided. In short, there is no principled basis for the majority's not following the underlying logic of *Stroud* and holding that the question of exigencies should also be governed by a bright–line rule.

The majority attempts to distinguish *Stroud* by claiming that it rests on a concern for police officers' safety during arrests; something which purportedly is not a concern of the exigent circumstances exception. Majority, at 735. This is only half true. The *Stroud* court was, to judge from the opinions, primarily concerned with the *uncertainty* that a "totality of the circumstances" rule creates in the business of law enforcement. Justice Goodloe wrote:

> The *Ringer* holding makes it virtually impossible for officers to decide whether or not a warrantless search would be permissible. Weighing the "totality of circumstances" is too much of a burden to put on police officers who must make a decision to search with little more than a moment's reflection. As the United States Supreme Court stated in *New York v. Belton,* 453 U.S. 454, 458, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), quoting LaFave, *"Case–by–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup. Ct. Rev. 127, 142:

> A highly sophisticated set of rules . . . requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.'"
>
> We agree with the Supreme Court's decision to draw a clearer line to aid police enforcement, although because of our state's additional protection of privacy rights we must draw the line differently than did the United States Supreme Court.

106 Wn.2d at 151. Justice Durham expressed a concern for police officers' safety, but she also shared the view that a case–by–case rule creates "practical difficulties for the police," 106 Wn.2d at 166, and that "a clearer set of rules is needed to aid the police." 106 Wn.2d at 167 (Durham, J., concurring).

Therefore, while the facts of *Stroud* presented a search incident to arrest, our decision was governed primarily by a concern which applies equally to warrantless searches made under exigent circumstances: the impossibility, from a police officer's point of view, of drawing the fine distinctions which a court applying a "totality of the circumstances" test will make in determining the search's validity. While we can, if we wish, read *Stroud* narrowly and adopt a "totality of the circumstances" test for the exigent circumstances leg of *Ringer,* it is not wise or consistent on our part to do so. We will not have relieved law enforcement of an impossible burden, as we undertook to do in *Stroud.* In not fulfilling that commitment, the majority has taken an unprincipled step backward.

### The Relevance of Oregon Law

Before moving on to my own analysis of warrantless automobile searches, it is worthwhile, for two reasons, to consider Oregon law on the question. First, the majority relies on an Oregon case, but it presents the case out of context. Returned to context, the case fails to support the majority. Second, Oregon has taken an approach to this question which, in general, I propose we follow.

The majority relies on *State v. Kock*, 302 Or. 29, 725 P.2d 1285 (1986), and correctly points out that *Kock* involved facts similar to those presented in the case before us. The police, acting with probable cause but without a warrant, searched a parked car prior to arresting the suspect. Contrary to the majority's suggestion, however, the resemblance ends there.

The majority states that: "The Oregon court rejected an argument that this was a search incident to arrest and focused on the narrow issue that is also before us." Majority, at 734. This is incorrect. *Kock* and this case do not present the same issue for the simple reason that the governing law in Oregon is vastly different from the governing law in Washington.

The relevant provision of the Oregon constitution reads as follows:

> No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Oregon Const. art. 1, § 9. Obviously, this provision is modeled on the Fourth Amendment, which it paraphrases almost exactly. As we have often noted, however, our own constitutional convention expressly rejected the Fourth Amendment model in favor of an express guaranty of privacy. Const. art. 1, § 7; *Ringer*, 100 Wn.2d at 690; *Stroud*, 106 Wn.2d at 148.

In the course of construing Oregon's search and seizure provision, the Oregon court has fashioned a state law automobile exception which, not surprisingly, is similar to that recognized by the Supreme Court under the Fourth Amendment.

> This case presents for us the heretofore unanswered question: Is there an "automobile exception" to the warrant requirement of Article I, section 9 of the Oregon Constitution? We hold that there is such an exception, provided (1) that the automobile is mobile at the time it

is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle. By adopting such a position, we align ourselves with the traditional federal "automobile exception" to the Fourth Amendment warrant requirement set forth in the seminal case of *Carroll v. United States* [267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925)].

*State v. Brown,* 301 Or. 268, 274, 721 P.2d 1357 (1986).

Oregon's state law automobile exception is entirely distinct from either the warrant exception for searches incident to arrest or the exception for searches conducted under exigent circumstances. This much is evident from the Oregon court's statement of the issues in *Kock*.

> We allowed review to decide whether the warrantless entry of the car to retrieve the suspected stolen property was lawful as a search incident to arrest and whether the search of defendant's car was lawful either under the "automobile exception" to the warrant requirement as described in *State v. Brown* [301 Or. 268, 721 P.2d 1357 (1986)], or, alternatively, under an individualized showing of exigent circumstances.

302 Or. at 32.

The principal issue before the court in *Kock* was whether actual mobility is a necessary minimum for the application of the state law automobile exception. Put another way, the question was whether Oregon, in construing its own constitution, would follow the United States Supreme Court in concluding that "inherent mobility" is sufficient to trigger the automobile exception for warrantless searches. *See Michigan v. Thomas,* 458 U.S. 259, 73 L. Ed. 2d 750, 102 S. Ct. 3079 (1982); *United States v. Ross,* 456 U.S. 798, 807 n.9, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982); *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970). Declining to follow the federal rule, the court in *Kock* decided to require actual mobility.

> Although logically it can be argued that the rationale of the seminal case of *Carroll v. United States* [267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925)], and its progeny, including *United States v. Ross* [456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982)], would

justify extending the automobile exception to automobiles that are capable of mobility, we elect to draw the so-called bright line of *Brown* just where we left it in that case: Searches of automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence.

*Kock,* at 32–33.

The foregoing shows why it is incorrect to say that the court in *Kock* "focused on the narrow issue that is also before us." Majority, at 734. The issue before the Oregon court was the scope of its state law automobile exception; specifically whether to follow a rule of inherent mobility. As for the issue before us—whether or not to require an individualized showing of exigent circumstances to justify warrantless automobile searches—Oregon had already decided it in *Brown.* And, as the majority does not say, *Brown* reached the same conclusion that *Stroud* implies. A case-by-case approach to exigent circumstances where automobiles are concerned is unrealistic from a police officer's point of view and unwise from society's point of view.

We are convinced that adoption of a "*per se* exigency rule" is a sound approach which provides the clearest guidelines for police in conducting automobile searches. Exigencies should not be determined on a case-by-case basis. Police need clear guidelines by which they can gauge and regulate their conduct rather than trying to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops.

301 Or. at 277.

Consequently, the majority is correct in spite of itself. We should follow our sister state. We should abide by the logic of *Stroud* and *Brown* and avoid foolish experiments with case-by-case analysis in this area. Instead, we should formulate a comprehensive bright-line rule to govern warrantless automobile searches. We have already articulated a bright-line rule for the "incident to arrest" leg of *Ringer.*

We should use this case to articulate a bright–line rule for the "exigent circumstances" leg.

## A BRIGHT–LINE EXIGENT CIRCUMSTANCES RULE

For reasons I have already noted, we cannot follow *Brown* in articulating a state law equivalent of the federal automobile exception. Oregon's search and seizure provision is a Fourth Amendment equivalent, while our constitution contains a broader express guaranty of privacy.

The fact that privacy is expressly guaranteed does not imply, however, that the guaranty is absolute. We have recognized before that Const. art. 1, § 7 prohibits only "unreasonable" invasions of privacy.

> In contrast, due to the explicit language of Const. art. 1, § 7, under the Washington Constitution the relevant inquiry for determining when a search has occurred is whether the State *unreasonably* intruded into the defendant's "private affairs."

(Italics mine.) *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). In *State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986) we noted:

> There is no historical evidence that the framers of our constitution, had they contemplated the existence of the automobile, would have completely exempted it from a *reasonable* search or seizure.

(Italics mine.) 107 Wn.2d at 5.

Therefore, in formulating a rule to govern warrantless searches of automobiles, the first question is the scope of the reasonable expectation of privacy in one's automobile. The Supreme Court's rationale for the Fourth Amendment "automobile exception" consists in part of an evaluation of reasonable expectations of privacy in automobiles. That discussion is relevant to the question before us, and should be taken into account.[1]

---

[1]Doing so in no way commits us to adopting the sweeping federal rule. Differences between the per se rule of exigent circumstances and the federal automobile exception are discussed *infra*, at 751–52.

In the recent case of *California v. Carney,* 471 U.S. 386, 391–92, 85 L. Ed. 2d 406, 105 S. Ct. 2066 (1985) the Court noted that the "automobile exception" originally rested on the mobility of automobiles and the exigencies—loss of evidence and the escape of suspects—that that mobility entailed. *See Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). Since *Carroll,* however, the rationale has evolved to stress instead the reduced expectation of privacy which people have in their cars. This results in part from pervasive government regulation of automobiles. The *Carney* Court quoted the following passage from *South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976), the leading inventory search case:

Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

428 U.S. at 368. *See also Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973).

The *Carney* Court also noted that the physical configuration of automobiles indicates a reduced reasonable expectation of privacy. 471 U.S. at 391. The Court referred to *Cardwell v. Lewis,* 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974), in which it stated:

One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.

417 U.S. at 590.

This reduced expectation of privacy—which exists and should be taken into account regardless of whether the issue arises under the Fourth Amendment or Const. art. 1,

§ 7—is the primary justification for a bright–line rule in this area. Under any such rule, by definition, police will conduct some warrantless automobile searches in the absence of actual exigencies. Those searches not justified by actual exigencies are nonetheless reasonable under Const. art. 1, § 7 because the privacy interest invaded in such searches is not as great as that involved, for example, in a search of one's home. However, since the privacy interest in automobiles is *reduced,* not nonexistent, the rule must be narrowly drawn to cover only those cases where exigent circumstances are most likely to arise, without authorizing warrantless searches in cases where exigencies are only a remote possibility.

Cases of exigent circumstances include—in addition to the imminent escape of a suspect involved here—danger to the public, danger to the officers involved or the imminent loss of evidence and any other circumstance which necessitates quick action on the part of the police in the performance of their duties. These cases are characterized by the need to act almost reflexively, on the officer's judgment, rather than on complex legal standards. They are also often characterized by an absence of complete information and a need, accordingly, to assume and act on a worst case scenario.

Formulating a general rule to cover such cases is not easy, but I find the majority's characterization of this particular case quite helpful. In pursuing the burglar of the music store, the police were involved in a fresh investigation. The burglary had occurred minutes before the car was discovered. Probable cause to search the car was arrived at on an initial open–view inspection of it. The officers involved had good reason to conclude that the suspect was nearby. The police were dealing with an emergent situation, on the basis of incomplete information, and time was of the essence. It is in cases such as this, involving a fresh investigation, that exigencies of the kind described above are most likely to arise.

A rule that warrantless automobile searches are permissible wherever the police are engaged in a fresh investigation would be too vague and probably too broad. I believe, however, that the following rule would capture most of the cases we are concerned with, without unreasonably intruding on legitimate privacy interests: A search of the passenger compartment may be conducted without a warrant whenever probable cause to conduct the search arises contemporaneously with the stop or initial open–view inspection of the automobile.[2]

This rule would complement *Stroud*'s rule that such a search may be made during the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car. In accord with *Stroud,* locked containers discovered in the automobile would not fall within the scope of the lawful search. However, unlocked compartments of the car, such as the glove compartment (and, less often, the trunk) would be included in the scope of the lawful warrantless search. *State v. Stroud,* 106 Wn.2d 144, 152, 720 P.2d 436 (1986). Individualized showings of actual exigent circumstances in cases not falling under the bright–line rule would be permitted. The purpose of the rule is to define a floor, not a ceiling.

Under this proposed bright–line rule, warrantless automobile searches would be permitted where the stop or initial nonintrusive inspection itself launches the investigation, or where the investigation is so fresh that facts concerning the car sufficient to constitute probable cause have not been uncovered by other means.[3] The rule is intended

---

[2]For the distinction between plain–view and open–view searches, *see State v. Kennedy,* 107 Wn.2d 1, 9–10, 726 P.2d 445 (1986). The proposed rule contemplates open–view inspections, *i.e.,* an inspection from outside the car.

[3]This does not imply that all the facts entering into probable cause must arise from the first contact; it only requires that the "last straw" raising the level of suspicion to probable cause result from the initial stop or open–view inspection. In this case, for example, the nature of the articles taken from the music store and

to limit warrantless automobile searches to those cases where the decision and authority to search arise unexpectedly, in circumstances not fully within the police officer's control, where he or she necessarily is operating on less than complete information in an emergent situation. In other words, the rule is designed to permit a search in cases likely to contain exigent circumstances, without requiring a showing of actual exigent circumstances.

The rule would not authorize warrantless searches where the police have developed probable cause in advance of locating the subject automobile. In those cases they usually will have the opportunity to obtain a warrant and—due to greater police control over the situation as a whole—actual exigent circumstances are less likely to arise. The key term "contemporaneously" is flexible, but certainly clear enough to preclude pretext warrantless automobile searches in long–term, ongoing investigations. In this sense the rule is narrowly tailored to those situations where it is actually necessary.

Unlike the federal automobile exception, this bright–line exigency rule would not obliterate the warrant requirement where automobiles are involved. *See United States v. Bagley,* 772 F.2d 482, 491 (9th Cir. 1985) ("[P]robable cause alone justifies a warrantless search or seizure of a vehicle lawfully parked in a public place."), *cert. denied,* 475 U.S. 1023 (1986). In addition, like the rule we stated in *Stroud,* this rule would not authorize the opening of locked containers; something which the federal "automobile exception" does permit. *United States v. Johns,* 469 U.S. 478, 83 L. Ed. 2d 890, 105 S. Ct. 881 (1985); *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982). In

the description of the car seen near the scene of the crime entered into the probable cause determination. Those facts were not revealed in the first stop or open–view inspection of the car. However, the sight of similar articles in the backseat of the car, combined with other facts evident in the initial contact (its being parked facing the wrong way; the dry pavement underneath) raised the level of suspicion to probable cause and, under the rule proposed here, justified a warrantless search.

these respects, the bright–line rule for exigent circumstances reflects the higher degree of privacy guaranteed by Const. art. 1, § 7 as compared to the Fourth Amendment.

Most importantly, the proposed rule carries out the task we set for ourselves in *Stroud,* rather than abandoning it, as the majority does. It would give front line law enforcement officials the concise, reliable guide they deserve.

#### CONCLUSION

Despite the fact that it upholds the search in question here, the majority unjustifiably expands the warrant requirement for automobile searches through its dicta and the basic logic of its analysis. It effectively overrules *State v. Stroud,* 106 Wn.2d 144, 152, 720 P.2d 436 (1986), which stated broad authorization for warrantless automobile searches.

Instead, we should hold unequivocally that police in situations such as that presented here can enter and search an automobile without obtaining a warrant. We can and should formulate a bright–line rule to govern warrantless automobile searches under exigent circumstances.

Under the rule proposed here, the search in question was valid. Probable cause for the search arose contemporaneously with the initial open–view inspection of the car. The car matched the description of one observed near the scene of a burglary minutes before. From outside the car, police officers observed electronic equipment matching the description of goods taken in the burglary. Given the reduced expectation of privacy in automobiles, this probable cause was sufficient to justify a warrantless search. Consequently, the suspect's apprehension was not poisonous fruit. Therefore, I would reverse the Court of Appeals and remand for trial on the merits.

ANDERSEN and DURHAM, JJ., concur with DORE, J.